Case 13-3964, John Hopkins et al. v. Kevin Chartrand. Arguing not to exceed 15 minutes per side. Mr. Selby for appellants. Good morning. Good morning. All right. I just wanted to wait for your opposing counsel to get situated. Thank you, your honors. May I reserve three minutes for rebuttal? You may, and you may proceed. Thank you. Your honor, this case is before the court on a narrower set of claims than it was before on the district court. Originally in this action, it's an employment action that arises out of my client's employment with the coroner's office in Geauga County. There were five causes of action in the original complaint. Two arose out of the FMLA, and there were two state law employment claims that all arose out of a wrongful discharge. There was also an FLSA overtime case. The district court below on cross motions for summary judgment granted summary judgment on all of the federal claims and disposed of the state law claims by declining to assert supplemental jurisdiction over those state law claims. We did not appeal from the FMLA claim. So before this court, the only claim is the FLSA overtime claim. Did you have an essentially agreed upon stipulated factual record in order to present competing, simultaneously competing summary judgment motions? No. The evidence was presented through depositions and affidavits. And so differences in factual settings emerged, factual assertions, let's say? There were, I think there was probably different emphasis put on different facts. I would say with respect to the FLSA claim, there was not a great deal of disagreement in the facts presented by the two sides as to what the duties and responsibilities of my clients were. It was more a legal analysis of how those duties and responsibilities fit into the administrative and executive exemptions. We had not agreed on a stipulated set of facts. But I think if you look at the facts, the deposition testimony of the coroner, Mr. Chartrand, and the testimony of my clients presented through deposition and affidavit. There's a fundamental agreement as to what their job duties and responsibilities are. They were both described very similarly. Do you want us to rule as a matter of law? I think there are... Although you thought summary judgment was appropriate, no one was saying it should go to a jury, as I understand it, or that it was a tribal issue of fact. Or you tell me. I think towards that end, there are a number of alternatives. I believe that you could determine, based on the evidence before you, in either the plaintiff's or the defendant's favor in the context of summary judgment. However, I think it is also possible, if you looked at those facts with respect to how the principal issue with respect to whether the administrative exemption applies, deals with not what their functions are, but whether their functions are part of the primary responsibility of the coroner's office. I'm sorry to interrupt. Just so I'm clear, I thought the issue really comes down to what the disputed issue is. What are the primary duties? Correct. Primary duties of these investigators. And your argument, as I understood it, was that their primary duty was to be investigators. And they go out and they investigate death scenes, and they write reports and do things of that nature. And then they, from time to time, engage in some office work. But that's not their primary duty. Right. And the coroner's position is, no, they are more administrative workers who also do investigations. And so I guess what I thought both of you were arguing is that you don't maybe disagree that much on what they do generally, but the disagreement is over what their primary duties are. And that's where I was getting at. I think it would be possible looking at these facts and say, okay, we agree as to what everything that they do here. But there's a question of fact as to whether their primary duties relate to the underlying primary functions of the coroner's office. One of the issues here. Was there a difference between the parties as to the time implications of the various kinds of responsibilities? One of the issues is that there was never any real substantial discovery done on those issues, which goes to our first assignment. As I practice these things more in the district court, I'm coming more firmly to the idea that cross motions for summary judgment, unless there is a very clearly delineated, agreed upon set of facts, everybody agrees these are what the facts are, and what we need is an interpretation, essentially as a matter of law. Based on these facts, here's the conclusion. And you get a judgment. You don't get a summary judgment, you just get a judgment under Rule 52, I think it is. But this isn't set up that way. This is set up as a summary judgment, which requires the district court to grant every reasonable construction to the contrary to both of you, right? And I think that's probably because when the case management order was set up, we weren't necessarily contemplating that this would be done as cross motions. The judge had set a dispositive motion deadline, and I think we each independently, with respect to the plaintiffs, we had not moved for summary judgment on all of the causes of action. One of the primary grounds, and this goes to the factual record on how much time was spent with respect to the various duties, is the administrative exemptions had not been raised as an affirmative defense in the answer. And as we went through the discovery, the only other case out there dealing with these type of coroner's assistance dealt with them in the context of non-exempt employees and didn't even address the issue. Similarly, similar sort of analogous cases dealing with police officers and criminal investigators, where in a police officer situation, the function of the police department is to investigate crime. The function of a coroner's office is to investigate deaths. That's what they were doing. There wasn't any discovery done on this administrative exemption because it hadn't been raised until after the summary judgments had been filed. But didn't you have a pretty good idea, as I read the discovery, that the coroner was claiming that there was some sort of an administrative exemption here? Just maybe did not raise it in the affirmative defense in the most timely manner, but you didn't have that sense, an idea from the questioning during the depositions? No, in fact, when I had taken Dr. Chartrand's deposition, I had specifically asked him, did you undertake any investigation to determine whether these employees were individuals who were entitled to overtime or not? And he said no. I never even looked into the issue. Had he at that point raised, well, I always believed they were exempt employees, it would have put me on notice to do that farther. Most of the discovery focused more on the wrongful discharge aspects of the claim, as opposed to the overtime issues of the claim. Largely, we moved for summary judgment on the grounds they haven't raised any type of exemptions. And the evidence is clear that they worked more than 40 hours per week. We're entitled to a judgment that the FLSA was violated. The only issue is we need to have a trial on what those damages were. One concern I have for both of you on this tribal issue fact point, and I didn't know the idea Judge Cleland raised of how you might normally get around this problem, but if we say there's a tribal issue of fact in this case, doesn't that mean all coronary cases under the FLSA will always be a tribal issue? I mean, it's always a jury question. So it's really problematic for the employer in terms of what to do, because naturally the employee would prefer overtime. And I doubt very much the duties of the investigators, employees of these offices, differ that much. In a jurisdiction, I'm sure it's just about exactly the same thing everywhere. Maybe some have more people, some have fewer. I mean, towards that end, I would argue that just the nature of it, just like police officers, that I think you can rule as a matter of law that they are. As a police officer, I mean, are you looking at 213A1 exemptions, this 1B1 that uses the word investigators? I am. You know, in Foster, the court, you know, I guess you could argue as Dictor, but in Foster they suggest that that was really about first responders. And I don't think about coroner employees as first responders. They're going to come to the scene, but you get the fire department there, you don't bring the coroners. But I think what Foster talked about was the fact that with respect to an insurance, because that was against nationwide insurance, that nationwide insurance, their primary function is not to do investigations. It's to provide people for insurance. I think your best point is not this reg. Your best point is this production administration. I agree with you 100%. And I think when you look at the right decision out of the second district and you compare whether a coroner's investigator is more analogous to those BCI investigators or more analogous to an investigator, an insurance claim, they're clearly more, it's more analogous to the police department. A police department, what it produces is criminal investigations. What a coroner's office produces is death investigations and the cause of death. And that is their function, their primary function, was to determine what those causes of death were. They weren't working in an administrative function. They were doing the actual production. What does the record reveal as to the investigative component of a field investigator in a coroner's determination? A coroner is a pathologist, probably a forensic pathologist by specialty, who is going to talk about gross and microscopic examination of the remains. He's going to be talking about, in trial, he's talking about his medical findings and so forth and perhaps the circumstances of the body where it lay in the field. That is part of it, but there's also, that's the medical component of it, but much of what the coroner is determining is just the factual. This person was in a car accident. They were shot. They were things that aren't... What I'm hearing Judge Cleland saying, why isn't that the produced item? The produced item is what the coroner says happened. That's why you go to a coroner. You go to the coroner for the people that tell you where the body was and talk to the witnesses, talk to family. Those are law enforcement investigators that investigate the criminality of the situation. If you look at Ohio Revised Code, Chapter 313, it sets forth what the coroner's responsibilities are, and it's far more than just that autopsy. It is 313-08, custodian of dead bodies, 313-08, identification of bodies, 313-09, maintain records of identification of the bodies, 313-12 and 13, conducting autopsies, 313-14, notifying relatives and disposing of deceased's property. The production-administrative dichotomy works. Correct. If you're going to go down that road, you know, Ford produces a car. You don't ask about all the things that happen in the process of making the car. You ask what's the end product. Isn't the end product here a coroner's report, not an investigator's report? No, I think that the core, what they're producing, is all of these things outlined in 313-12 and 13. And I think this goes back to the first cause of action. I mean, the first assignment of error is, had they raised this affirmative defense, exactly the type of sort of detailed analysis you're talking about, detailed discovery depositions, the record on all of those things of what the coroner ultimately produces, there wasn't any detailed discovery on that because it hadn't been raised as an affirmative defense. Okay. You will have your rebuttal time. Thank you. Thank you, Your Honors. Good morning, Your Honors. Good morning. My name is James Budzik on behalf of Defendant Dr. Kevin Chartrand. Listening to counsel, listening to the panel, it's clear that you have a good grasp of the issues already in this case. I would note, as you look through the record of proceedings, you will find that Mr. Selby did come into these proceedings somewhat later in the game. The two plaintiffs were represented by two other attorneys well prior to his appearing in this case. We had two status conferences prior to Mr. Selby coming in at those status conferences. They were approximately 20 and 30 minutes long, as the record does reflect, and Judge Nugent did ask both the parties again, what's this case about, and we told them both times we're looking at overtime cases, and I believe we did mention the word exemptions. We talked FLSA, and we said state law claims. I assume that there's nowhere in the record that we can find that. No, no. Right. The record states that a status conference held 30 minutes. What about this way of thinking about the case? You know, you didn't completely forfeit this exemption argument, but it did mess up discovery a little bit, and it is, Judge Cleveland's point, it's so strange to me to have, I realize Quicken Loan shows you can have jury trial or bench trial issues, but it seems so problematic in an area where there must be hundreds, if not thousands, of these employees across the Sixth Circuit, and we're going to now potentially say this is a tribal issue of fact, which is, for your client, is a real problem. It's a real problem. You either are going to just say forget it, we're going to treat them as not exempt, they get overtime, or I don't know what you're going to do, but yet I will say there's something to be said for this point that the record before us is a little messed up given the way, I'm not blaming anyone, but just happenstance. Maybe we say nothing and let you guys just do more discovery and then tee it up the way Judge Cleveland suggested. Would that work? Is that an alternative? Obviously, you know, you're the Court of Appeals. You have to make the final decision. Prior to this action, of course, there were two other actions referred to by Judge Nugent. One, of course, was the state law claim when we talked about the classified versus unclassified status under Chapter 124. And again, when the parties went down to Columbus, there were actually lots of discussions about what the parties did, what the two plaintiffs did, and whether they would be a classified employee under state law, which is normally an hourly type of designation, or an unclassified fiduciary employee. You have the decisions of the Ohio State Personnel Board of Review finding them unclassified. Thus, they could not have jurisdiction on that case. At the same time, the plaintiffs filed a mandamus and declaratory judgment action in the 11th District Court of Appeals in Chardon asking for reinstatement. We had two days of depositions of Dr. Chartrand in those matters. When we did the depositions in this case, Mr. Selby was there. Tell me the point you're making right now. Are you making the point there has been enough discovery? There has been plenty of discovery in this case, yes. And when I was there, Mr. Selby was... Related sufficiently to this issue. Yes, because if you read the deposition of the two plaintiffs, I went right down the list. How much do you make? Was it over $455 per week? Yes. We talked about how much discretion and independent discretion do you have? Both of the plaintiffs said, we use all kinds of independent discretion. Thus, we agree that that is not an issue in the case. Would you rather lose this as a matter of law than have us say this is a tribal issue of fact? No, I would not. Legally, though, what is the United States Supreme Court? What have they said? Let's look at the CFRs on this case. That's the Chevron case. Let's look at what the CFRs do state. And that's why Judge Nugent, he specifically looked at the regs on this case in determining what do the two plaintiffs do in conjunction with the record that was set. Because, again, he made many factual findings. I didn't see a coroner office reg. Have you found a coroner office reg? There is no coroner office reg. You're right, Your Honor. And that's why the reg state, you look at duties, and it gives examples. It gave the examples, of course, of the investigator-type duties. What do you think of the production-administration dichotomy? As I stated in the brief. I can see it working for you, and I can see it working against you. I do not believe it should be dispositive because it just doesn't fit in every case. That's what my brief said. I believe it doesn't fit here. You produce coroner reports, and you make the argument? Yes. It's a service. What does a coroner do? It's service-oriented. It's not a production line. We do not create widgets. We do not create cars. Yes, he creates verdicts. The coroner has to be a medical doctor, of course. And, of course, neither of the plaintiffs are medical doctors. They do not make medical findings, as Judge Cleland, I believe, noted in his statements. But the point is it's an analogy, and it's trying to help us get around the fact that the word primary is very elusive. The regs are amorphous, Your Honor. I thought the whole point of the production-administration dichotomy was not to say this tells you how to answer every case. It tells you how to think about primary. I thought that was the point of it, and that's why it could still apply in a service setting. It doesn't dictate an answer. I agree with you. But I guess I'm not sure I understand why you're resisting it as a way to think about the case. Well, it was, again, reading their brief, it was clear that they were just, I believe, trying to say that on the production side, they're more involved in production, and that was clearly, and the production, as they saw it, was they actually did the work for the coroner, and that's not the case here. The record shows that they are administrative employees. Yes, they did administrative investigations. They did the interviews of various individuals. They did a number of administrative office activities. They kept, both of them secured the office. Mr. Hopkins kept complex time-coding situations. Again, that is all administrative actions, much like human resources actions, which the regs specifically state that is an administrative function, and hence that would fall under that exemption. Are employees such as this referred to as investigators all through Ohio through statute or regulation, or is it just this county that happens to have denominated them as quote-unquote investigators? This is how this county denominated them. I believe each county is a little different. I believe when I looked at the state code, I did not find a state code under 124.11 where it gives. Do you think you might have ducked the issue if they had been denominated administrative assistants or something similar to that with a subset of investigative responsibilities? No, I think we would still be here because, again, as you know, Your Honor, you don't look at the name of the title, at the name of the classification. You've got to look at what is the employee doing. That's the test. I can call anyone a clerk. That doesn't mean that they're an administrative clerk. That's why just looking at a title just doesn't cut it. How about the CFR 541.3b1 and then 3, the one that mentions investigators all over the place? You're right. As you look, you know, what is, and you noted the nationwide case, and certainly it's a little different for law enforcement officers and first responders. You know, that's what we're not talking about that. We are certainly talking about the, again, the other administrative notation. And, again, looking at the rules, you know, they did talk about, you know, they review factual information, they investigate. My position and the position of the coroner is that those are useful aids in trying to reach a determination as to what the employee's duties are rather than just looking to the name of the title. That's why the court, in my estimation, as you look through the granting of summary judgment, the court made detailed findings as to what the employees did. Went boom, boom, boom, boom. This is what they did. The court said there's no dispute. They make the $455. There's no dispute about independent discretion and independent judgment as a primary duty for those investigators. And the court did state you have to look at their primary duties. Then after reviewing what they did, he said he finds this close, very analogous to the investigators in the administrative regulations. And he puts it all together in a nice analytical framework and states, looking at this as a whole, these employees are administrative in nature. Thus, as that, they fall under the exemption, and thus he granted judgment on behalf of the defendant on the FLSA claim. Further, I would note that while Mr. Selby did... Just before... It was about 7. It was about 7 because Mr. Hopkins was... So you had Chartrand, you had these two, and what were the other people? They had some part-time clerks and part-time investigators just to help out every now and then. So the plaintiffs were the only full-time people? Yes. For your... There was a deputy coroner who was full-time. Is that a little counterintuitive that they're administrative when they're not managing... He was also a doctor, the deputy coroner, who actually, after Dr. Chartrand stepped down, he ended up becoming the coroner. You're not saying one of the plaintiffs was a doctor? No, none of the plaintiffs are doctors. Yes, you're saying the deputy and Chartrand are doctors, then you have the two plaintiffs, and then you have part-time people. Right. I'm just making the point, is it not a little counterintuitive to call the plaintiffs administrators when they're not really overseeing anyone but themselves and some people that show up on Tuesdays? Well, I don't technically understand the question. It's a counter... You have to give a classification title for each position, and that's what Geauga County did in their discretion. That's how they designated that classification, as a clerk investigator. Actually, Mr. Hopkins, as the record reflects, he was the chief investigator because he did some supervisory activities, and Mr. Boyles was the clerk investigator. Anything further? I have nothing further unless the panel has other questions. Thank you. Thank you very much. Thank you. Selby, you have some rebuttal time. Thank you, Your Honors. A number of brief points. Judge Cleveland, with respect to your point that the function is to produce these reports on the cause of death, at page ID 259 and 260, Dr. Chartrand is talking about, during his deposition, what our clients do, and he talks about them being the first responders to the death scene, but then he goes on to say, in a collaborative way, we would decide what the cause of death was. So this wasn't a situation where Dr. Chartrand was making that decision. The clients were participating directly in that decision with him, and they were part of making that call. So they were producing those reports along with Dr. Chartrand. And as far as Judge Sutton, what you had raised about the possibility of remanding this for further discovery to develop the record, I think one of the things available under the first assignment of error, where we argued it was error to allow them to amend their answer to insert this affirmative defense after motions for summary judgment had already been filed, I think one of the remedies available to you would be to say, we will allow that amendment, but we're remanding the matter to give the parties an opportunity to do additional discovery on that particular issue, that affirmative defense. Now- Is this a case where the two parties, after that discovery, could submit agreed upon facts and then let the judge make the call about primary duty? I would probably have to see what the deposition testimony was, but I would say that that is, it's a possibility. I don't know, what I don't know is what the respective parties would say as to the amount of time and responsibility spent on all of those particular matters, but it would be at least a possibility. I think based on the record, and based on Dr. Chartrand's testimony here, that they work together in putting these together, there's enough on the record that you could find in our client's favor. But if the panel was uncomfortable doing that and setting a precedent for all coroners in essentially four states, under these circumstances, I think that's a remedy that would be available to you as an alternative, as opposed to simply upholding the judgment in this case. It does seem a little problematic to be able to rule at this point in your client's favor. I'm not sure that there are undisputed facts that would be sufficient for us to rule as your clients would like for us to. Now maybe your time is out, but you have about a 15-second response to it? Well, and to the extent that this Court, in looking at this, believes there are still questions of fact, the appropriate remedy is to grant summary judgment to neither of the parties. Thank you, Your Honors. Okay. Thank you, Counsel, for your arguments today. I appreciate it. We appreciate them. The case will be submitted. Thank you. Thank you.